11 WEST 42ND STREET, SUITE 900
NEW YORK, NY 10036
(212) 354-0025
FAX (212) 869-0067

TL@TISDALE-LAW.COM

# TISDALE
## LAW OFFICES, LLC

*New York, NY - Southport, CT*

10 SPRUCE STREET
SOUTHPORT, CT 06890
(203) 254-8474
FAX (203) 254-1641

WWW.TISDALE-LAW.COM

September 24, 2007



USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-27-07

**_By Hand Delivery_**
Honorable Victor Marerro
U.S. District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 660
New York, NY 10007-1312

Re:  DEIULEMAR SHIPPING SPA v. SPOT ON SHIPPING LTD. a.k.a. SPOT
 ON SHIPPING BVI a.k.a. SPOT ON, et al.
 07 Civ. 3820 (VM)
 Our Ref.: 07-99-1694

Dear Honorable Sir:

 We are attorneys for the Plaintiff, Deiulemar Shipping SPA in the above captioned matter. We are writing to set forth support for Deiulemar's request for leave to file a Verified Second Amended Complaint in support of the issuance of an Amended Ex Parte Order in turn authorizing issuance of Supplemental Process of Maritime Attachment and Garnishment in this matter.

**_Subject Matter Jurisdiction_**

 The underlying dispute in this matter as set out in the proposed Verified Second Amended Complaint (annexed hereto as Exhibit 1) concerns the breach of two Forward Freight Agreements ("FFA's"). Plaintiff asserts that the breach of the FFA's gives rise to a "maritime claim" sufficient for purposes of a maritime attachment under Supplemental Admiralty Rule B.

 FFA contracts are maritime in nature and have all the hallmarks of a typical maritime contract. Such contracts concern future performance of a shipping service between ship owners, operators, charterers and managers and have become instrumental for managing risks inherent in dealing with highly volatile ocean freight prices. FFA's have become an essential part of maritime commerce and are thereby maritime contracts.

 Admiralty jurisdiction is afforded this Court under 28 U.S.C. §1333(1), which provides for original jurisdiction in "any civil case of admiralty or maritime jurisdiction." See Sea Transport Contractors, Ltd. v. Industries Chemiques du Senegal, 411 F. Supp. 2d 386, 2006 A.M.C. 1076, 1082 (S.D.N.Y. 2006); see also Stolt-Nielsen S.A. v. Celanese AG, 430 F.3d 567,

572 (2d Cir. 2005). To determine the boundaries of admiralty jurisdiction, courts turn to the purpose of the grant. See Insurance Co. v. Dunham, 78 U.S. 1 (1871). As recently confirmed by the United States Supreme Court in Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 608 (1991), "the fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" Id.; quoting Sisson v. Ruby, 497 U.S. 358, 367 (1990) quoting Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674 (1982). Stated differently, where "the subject matter of the contract relates to a ship in its use as such, **or to commerce** or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract." See Ingersoll Milling Mach. Co. v. M/V BODENA, 829 F.2d 293, 302 (2d Cir. 1987) (emphasis added).

Here, the subject matter of the dispute is immersed in the business of maritime commerce. FFA's are commitments to perform in the future a shipping service between ship owners, charterers and/or traders. The parties to such an agreement contract to "pay the difference between a price agreed today and the future price of moving a product from one location to another, or for the future price of hiring a ship over a period of time." See *Managing Risk with Forward Freight Agreements*, *Commodities Now*, June 2005, available online at: http://www.commodities-now.com/content/market-areas/ags-and-softs/ma-article-7.pdf?PHPSESSID=34967b.

Plaintiff has thus demonstrated that the subject matter of this dispute is maritime in nature and that maintaining jurisdiction would protect maritime commerce. In any event, plaintiff has clearly established that the subject matter of this dispute is not so attenuated from the business of maritime commerce that admiralty jurisdiction should be denied. See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 200 (2d Cir. 1992)(stating that "a federal court must initially determine whether the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction). It cannot be ignored that "the question of whether a dispute falls within admiralty jurisdiction cannot be divorced from the purposes for which admiralty and maritime jurisdiction was granted. Id. In contract cases, maritime jurisdiction is conferred where, as here, the contract touches "rights and duties appertaining to commerce and navigation." See S.S. Eclipse, 135 U.S. 599, 608 (1890). The forward freight agreements Deiulemar and Spot On are clearly such a case.

This case is analogous to the United States Supreme Court's recent finding Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603 (1991), that a marine fuel requirement's contract is maritime. In Exxon, the Court reasoned that a contract for the future sale of fuel oil was maritime in nature because the value of the fuel related to maritime commerce. Id. at 613. Importantly, in Exxon, the Supreme Court greatly expanded the scope of admiralty jurisdiction for contracts by eliminating the "preliminary services" rule that kept contracts such as these from being conferred admiralty jurisdiction. Id. at 608 citing The Thames, 10 F. 848 (S.D.N.Y. 1881)(holding that preliminary services leading to a maritime contract are not themselves maritime contracts).

Following the reasoning set out in Exxon, this Court recently determined that a 'cooperation contract' is a maritime contract because it provides a "shipping management

function [that] increase[s] the efficiency and decrease[s] the cost of … shipments of large quantities of various materials." See Sea Transport Contractors, *supra*. In so finding, this Court reasoned, "it is of no moment in the Exxon analysis that STC will seek future charter parties, or act as an agent of ICS in so doing. Indeed STC's contract … is similar to the maritime contract in *Exxon* where Exxon promised to supply fuel even if by way of a third party." Id.

### *Leave to File Second Amended Verified Complaint*

Plaintiff now seeks leave pursuant to Federal Rule of Civil Procedure 15(a) to file a Verified Second Amended Complaint in this action. For the reasons set forth below, the application should be granted.

Plaintiff filed its original Verified Complaint on May 15, 2007 alleging that Defendant Spot On Shipping Ltd. ("Spot On") was in breach of the FFAs dated February 7, 2007 and March 8, 2007. Plaintiff filed a Verified Amended Complaint on June 4, 2007 adding several alter ego defendants to the action.

Since the issuance of the Ex Parte Order, the Plaintiff has served the Order and Process of Maritime Attachment and Garnishment (the "Writ") on the New York garnishee banks identified in the Order and Writ. As of today's date, the Plaintiff has succeeded in attaching $7,219.94 of alter-ego defendant Zhanggang Shipping Ltd.'s funds on 8/14/07 and $1,000,000 of Zhanggang Shipping Ltd.'s funds on 9/18/07. Pursuant to Local Rule B.2 of the Local Rules for the United States District Court for the Southern District of New York, the defendant Zhanggang Shipping Ltd. has been notified of these attachments. Further, none of the Defendants have entered an appearance in this action nor has have they filed an Answer to the Verified Amended Complaint.

Subsequent to filing the Verified Amended Complaint, on June 4, 2007 the Defendant, Spot On, failed to remit further payments due and owing to the Plaintiff in breach of the February 7, 2007 and March 8, 2007 FFAs. Plaintiff thus alleges to the Court in its proposed Verified Second Amended Complaint that it may now properly seek security on those claims pursuant to Supplemental Admiralty Rule B.

Pursuant to the terms and conditions of the FFA's, all disputes between Plaintiff and the Defendants are to be submitted to the English High Court with English law to apply.

Unless an opposing party can show prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. See Foman v. Davis, 271 U.S. 178, 182 (1962). Leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a).

Plaintiff's Verified Second Amended Complaint will not prejudice the Defendants because they have not filed an Appearance or Answer, and, based on the allegations set out in Plaintiff's Verified Second Amended Complaint, Plaintiff is entitled to the remedy of attachment and garnishment pursuant to Supplemental Rule B of the Federal Rules of Civil Procedure. Attached hereto as Exhibit 2 is a proposed Order granting Plaintiff's application for leave to file a Verified Second Amended Complaint.

      For all of the foregoing reasons, it is respectfully prayed that Plaintiff's request for leave to file a Verified Second Amended Complaint be granted. We are available to discuss this matter at any time convenient to the Court.

                                          Respectfully submitted,

                                          Lauren C. Davies (LD 1980)

LCD/bhs

> Request GRANTED. Plaintiff is authorized to file a Verified Second Amended Complaint herein in the form submitted with plaintiff's letter dated 9-24-07.
>
> SO ORDERED:
>
> 9-26-07
>
> DATE     VICTOR MARRERO, U.S.D.J.